## IN THE UNITED STATES DISTRICT COURT OF MARYLAND

JANE DOE                                    *

      Plaintiff                      *

      v.                             *

UBER TECHNOLOGIES, INC.                     *

      Defendant                      *    Case#: 1:20-cv-00370

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MOTION TO VACATE ORDER OF DEFAULT

**NOW COMES**, Defendant, John Kenney, by and through his attorney, J. Wyndal

Gordon of **THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**, to submit this Motion to

Vacate Order of Default and Request for Rule 11 Sanctions Judgment pursuant to F.R.Civ.P 55,

Local Rule 108 (2), and any other applicable Federal Rule or Local Rule, alleging as true the

following:

### I.    STATEMENT OF FACTS

That Plaintiff filed suit in the instant matter on or about February 11, 2020, just days

before the expiration of the original statute of limitations which was on or about February 17,

2020.  Plaintiff received summonses for service of process on February 13, 2020, to be served

within 90 days after the complaint was filed.  F.R.Civ.P. 4 (m), *see also* (Doc. 4 p. 2).  Plaintiff

failed to perfect service upon Defendant John Kenney within the time prescribed under the Rules,

and on May 10, 2020, --the 90th day, --Plaintiff appropriately filed a Motion for Extension of

Time for Service of Process.  (Doc. 5).  Plaintiff however failed to request the re-issuance of the

expired summons for Defendant Kenney.  *See* F.R.Civ.P. 12 (b)(4) (Insufficient process).

Notwithstanding this fact, in support of good cause for the extension, Plaintiff argued the

1

following in her motion:

> Plaintiff has attempted to effect service, via private process, on Mr.
> Kenney on five different days without success. Specifically,
> Plaintiff's process server attempted to effect service on Mr.
> Kenney at his home in Baltimore on April 24, April 26, April 29,
> May 2, and May 5, 2020 to no avail. Consequently, on May 9,
> 2020, Plaintiff mailed to Mr. Kenney the complaint and
> summonses by certified and registered mail. As of the writing of
> this motion, Plaintiff has not received a return on service for Mr.
> Kenney. (Doc. 5).

Plaintiff's Motion was granted the very next day, on May 11, 2020. (Doc. 6). Accordingly, Plaintiff an additional 60 days to perfect service. (Doc. 6). The deadline for effecting service upon Defendant was extended to July 11, 2020. July 11th had come and gone, and Plaintiff never received a return of service for her certified mailer as Defendant Kenney was never served.

Plaintiff claimed during the additional 60 days that she attempted to effect service upon Defendant Kenney several more times unsuccessfully after May 10, 2020 –to wit: May 12 & 14, 2020 –yes, two days. Incidentally, Plaintiffs attempts were made during hours and days when most people would be at work, but more importantly, the summons Plaintiff attempted to serve had expired days earlier as it was well over 90 days old --94 days to be exact, *see* F.R.Civ.P. 4(m). The summons needed to be re-issued to effect proper service upon Defendant Kenney or a legal surrogate, unfortunately, neither service nor the re-issuance of the summons ever occurred.

After realizing that it was highly unlikely Plaintiff would serve Defendant Kenney by July 11, 2020, Plaintiff filed a *Second* Motion for Extension of Time for Service of Process on July 10, 2020. *See* (Doc. 7). Plaintiff's Second Motion contained essentially the same arguments as the first but emphasized the fact that Plaintiff had "yet to be able to effect service on all Defendants" – . . ."specifically" Defendant Kenney. *See* (Doc. 7 pp. 1-2). In pertinent part,

Plaintiff alleged the following:

> On May 14, 2020, Plaintiff's second process server **_attempted_** to leave the complaint and summons with Mr. Kenney's mother, Voncile Johnson, who resides at the same dwelling, but she denied the relationship and refused. <u>Plaintiff's efforts remain ongoing, as Plaintiff's second process server is set to make additional efforts to personally serve Mr. Kenney in the coming week</u>.  (Doc. 7 p. 2).

However, no additional efforts were made.  Moreover, Plaintiff's motion failed to allege what, if any, steps were taken to initiate any efforts after its failed attempt on May 14, 2020.  (Doc. 7).  Notwithstanding this fact, based the record before the court as presented by Plaintiff, Plaintiff did nothing more to effect service upon Defendant Kenney for the remainder of May 2020, all of June 2020, and through July 10, 2020.  Graciously, notwithstanding, the Court promptly granted Plaintiff's *Second* Motion for Extension of time on July 11, 2020.  (Doc. 8).  The order allowed Plaintiff an additional *30 days* to perfect service upon Defendant Kenney extending the dismissal deadline from July 11, 2020, to August 10, 2020.  (Doc. 8).  Despite the court's generostiy, Defendant made no further efforts or attempts to serve Defendant Kenney during the entirety of the next 30 days.

On August 10, 2020, after doing absolutely nothing further to serve Defendant Kenney for close to 90 days (88 days to be exact), shockingly, Plaintiff filed an Affidavit of Service with the Court alleging that she perfected service upon Defendant Kenney way back on May 14, 2020, *see* (Doc. 9), –nearly 60 days <u>before</u> Plaintiff filed her <u>*Second*</u> Motion for Extension.  Despite Plaintiff's claims in her Second motion that she merely "attempted" service upon Voncile Johnson, Defendant Kenney's mother, and that her "efforts remain[ed] ongoing . . . to personally serve Mr. Kenney", she was now repackaging this same information and re-presenting it to the

court as if her initial attempts were successful, *ab initio*.  And it did not stop there.

Accompanying Plaintiff's Affidavit of Service were pictures of Ms. Johnson's home, her dog, and *one* of her parked cars.  Conspicuously missing from all of the photographs and evidence were pictures or videos of Voncile Johnson, or her refusing service during Plaintiff's May 14, 2020, attempt.  Also missing from Plaintiff's photographs and evidence were pictures of the five other vehicles in the parking lot Ms. Johnson owns and operates regularly.  *See* (Johnson Aff. & Exs.).

To add insult, on February 25, 2021, Plaintiff filed a Motion for Clerk's Entry of Default on her complaint alleging *false* claims of non-consensual sex with Defendant Kenney, --charges Kenney was previously acquitted of after a full-blown jury trial on June 12, 2018.  *See* (Case Search Printout).  It should be noted during his trial, Plaintiff Jane Doe's testimony was presented, fully scrutinized, evaluated, and rejected by a Baltimore City jury.  Defendant Kenney was acquitted of every offense charged --including her non-consensual sex/rape charge.

More insulting, is the fact that Plaintiff has presented as proof of entitlement to a Default Judgment the same false information contained in her bogus Affidavit of Service from dated August 10, 2020, and this time, she goes further.  *See* (Doc. 9). In her Motion for Clerk's Entry of Default, Plaintiff disingenuously alleged:

> "On May 14, 2020, a copy of Plaintiff's Complaint and a Summons in a Civil Action <u>were</u> served by Plaintiff's private process server upon Voncile Johnson, Mr. Kenney's mother, at Mr. Kenney's usual place of abode located at 5027 A The Alameda, Baltimore, MD 21239."  (Doc. 9).

However, Plaintiff's private process servers, Jeff Foreman's unsworn notes reflect a much less clear and far more incongruent account of what actually happened on that day.  It grossly

distorted the facts and is palpably inconsistent with the allegations contained in Plaintiff's Second Motion for Extension of Time. *See* (Doc. 36-1), (Doc. 7)*, see also U.S. v. Ince*, 21 F.3d 576, 579 (4th Cir. 1994) (Even if a "prior inconsistent statement would otherwise be inadmissible as hearsay, it may be admissible for the limited purpose of impeaching the witness."). In a hearsay document presented by Plaintiff, her process server, Foreman, alleged that a someone was seen getting into and/or driving a Black Honda registered to Voncile Johnson, who was supposed to be John Kenney's mother. *See Id.* Foreman additionally alleged that after watching the Honda leave the scene, he walked up to Ms. Johnson's front door and began knocking but no one answered. *Id.* He further alleged that someone walked in front of his car but did not say who. *Id.* To say the unsworn notes were difficult to understand would be an understatement. However, Foreman's Affidavit of Service reflects something drastically different than what was reflected in his apparent contemporaneous notes of the same event. Foreman's *Affidavit* is peculiarly silent about any conversation Foreman claimed to have had with a woman he believed to be Ms. Johnson; and it is especially silent about the woman's denial of any relationship with Defendant Kenney and her "refusal" to accept service on his behalf.

What is clear, however, is that service of process was never legally perfected upon Defendant Kenney. Plaintiff's failed attempt is what prompted Plaintiff's last minute filing of a Second Motion to Extend Time for Service of Process –almost two months later. Defendant Kenney submits that Plaintiff knew Defendant was never properly served with Plaintiff's summons and complaint and was attempting to mislead the court. It is for these and other reasons, Defendant submits this Motion to Vacate the Notice of Default. Defendant further submits that his attached affidavit and the one from his mother as support for the fact that he has

never been properly served nor has Defendant's mother on his behalf. For the reasons below, Defendant's Motion to Vacate should be respectfully GRANTED.

## II.    STANDARD OF REVIEW

The standard of review of a district court's refusal to set aside an entry of default is abuse of discretion. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir.2006); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

## III.    LEGAL ANALYSIS

When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic. *See* F.R.Civ.P. 55(c) (providing that "[f]or good cause shown the court may set aside an entry of default"). This court has repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits. *Colleton Preparatory Academy, Inc., v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) *citing Tazco, Inc. v. Director, Office of Workers Compensation Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir.1990) ("The law disfavors default judgments as a general matter."); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir.1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). This imperative arises in myriad procedural contexts, but its primacy is never doubted. *Colleton Preparatory Academy, Inc.*, 616 F.3d at 417.

6

### a. Meritorious defense

Defendant has a meritorious defense to Plaintiffs claims. Defendant was not properly served with process in this case. (Df. Aff.). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A plaintiff may perfect service on an individual in one of several ways. F.R.Civ.P. 4(e). First, a plaintiff may follow state law for the state where the district court is located or where service is made. F.R.Civ.P. 4(e)(1). Second, a plaintiff may deliver a copy of the summons and the complaint to the individual personally. F.R.Civ.P. 4(e)(2)(A). Third, a plaintiff may leave a copy of the summons and complaint at the individual's dwelling or usual place of abode with an individual of suitable age and discretion who resides at the dwelling place. F.R.Civ.P. 4(e)(2)(B). Fourth, a plaintiff may deliver a copy of the summons and complaint to an agent authorized to accept service of process for the individual. F.R.Civ.P. 4(e)(2)(C). Plaintiff failed to satisfy all of these requirements. Equally important to note is the fact that Plaintiff was not living with his mother at the time she attempted service. (Df. Aff.). His mother's residence at 5027 A The Alameda, BA, MD, was neither his dwelling nor usual place of abode. (Df. Aff.), (Johnson Aff.).

Although Defendant's mother lived at 5027 A, The Alameda, BA, MD, she was never served on behalf of her son with the summons and complaint in the instant case, and even it she was, hypothetically, it would have been of no moment because the summons was clearly expired, and thus, insufficient. (Johnson Aff.), *see, e.g.*, F.R.Civ.P. 12(b)(4). Federal Rule 4(m) provides that service of a summons and complaint must be completed within 90 days after the complaint is filed. F.R.Civ.P 4(m). The responsibility rests upon the plaintiff, rather than the defendant, to

ensure the summons is valid and timely served with the complaint. *See* F.R.Civ.P. 4(c). The court does not issue a summons *sua sponte*; a plaintiff must request one by presenting a properly completed form to the Clerk. *See* Fed. R. Civ. P. 4(b). There is no evidence that Plaintiff requested the re-issuance of the expired summons she claimed she had served upon Defendant Kenney via his mother, Voncile Johnson. *See generally, Craig v. Melwood Horticultural Training Ctr., Inc*., No. PWG-13-2742, 2014 WL 3547341, at *2 (D. Md. July 16, 2014) (noting that without a valid summons, "no amount of diligence" would allow a plaintiff to attempt service on a defendant"). The request for re-issuance of the summons was not submitted with Plaintiff's request for extension of time to serve the summons and complaint. As it stands, Plaintiff's re-issuance failure also runs afoul with Md. Rule 2-322(a) --which provides Defendant with another defense upon which to stake his claim. *See* F.R.Civ.P. 4(e)(1) (an individual may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made); Md. Rule 2-113 "[A] summons not served within . . . time shall be dormant, renewable only on written request of the plaintiff.").

Plaintiff knows that Defendant Kenney was not served with process because her process server failed to make service upon Kenney or a surrogate. (Df. Aff.), (Johnson Aff.). Plaintiff's private process server, Jeff Foreman, claimed that he served Defendant's mother Voncile Johnson but has failed to produce any credible proof. Foreman's unsworn notes that accompanied his bogus Affidavit of Service raised more questions about the uncertainty of service of process than it answered. Foreman may have taken a lot of pictures and made a lot of noise knocking on doors, disturbing Ms. Johnson's neighborhood, and startling her family dog,

but he failed to capture any pictures of the people he claimed to have served, to wit: Defendant or a legal surrogate.  *See* F.R.Civ.P. 4(e).  He didn't even try to collect the signature from the one person he now claimed he served.  Incidentally, that person, according to Foreman, stated she did not know Defendant Kenney and refused to accept service on his behalf.  It all makes sense, because that person was not Voncile Johnson, nor was she a resident of the dwelling, she was a visitor.  (Johnson Aff.).

More importantly, upon Foreman submitting his indecipherable May 14, 2020, report coupled with his false Affidavit of Service to Plaintiff on or about that same day, instead of filing them with the court in May 2020, to show proof of service pursuant to Rule 4(l), Plaintiff used its *content* to show she had yet to effect service upon Kenney and needed additional time to do so. On July 10, 2020, Plaintiff requested another extension to effect service upon Defendant 58 days after allegedly receiving Foreman's Affidavit of Service and accompanying bogus report because she was fully aware, as Defendant is today, that Defendant had never been properly served. (Doc. 7).

In Plaintiff's Second motion for extension of time to effect service, she asked the court specifically for more time to serve Defendant Kenney because (1) he was the only defendant remaining who had *not* been served, (2) her last attempts were unsuccessful, and (3) she vowed that her efforts to have Defendant "personally serve[d]" were "ongoing."  (Doc. 7).  Indeed, paragraph 5 of her Second motion stated the following:

> Plaintiff has and continues to make every effort, using multiple
> methods prescribed under FRCP 4, to properly effect service under
> the rule but as of the date of this filing, has yet to do so.

The problem for Plaintiff was that she never made any further efforts after May 14, 2020,

long before filing her second motion on July 10, 2020.  Instead, she chose to make up a story to meet the August 10, 2020, dismissal deadline which was all but certain to dispose of her case due to lack of service/personal jurisdiction.  *Mendez v. Elliot*, 545 F.3d 75, 78 (4th Cir. 1995) ("Rule 4(m) requires that if the complaint is not served within 120 days after it is filed, the complaint must be dismissed absent a showing of good cause.").  Although Plaintiff failed to exercise any diligence to have Defendant served, she was comfortable making up a story for cover because she knew if the dismissal was granted, the statute of limitations would have kicked-in, barring Plaintiff from refiling her claim.  Therefore, Plaintiff chose to present a false Affidavit of Service with hopes that no one would catch it, or that Defendant would never find out, find out too late, or not be able to retain counsel upend her wrongdoing.  Fortunately, none of the aforementioned occurred, and, quite frankly, it's only because Plaintiff did such a poor job covering her tracks.

If Plaintiff truly believed service was proper on May 14, 2020, it defies credulity to impart that she would have filed a motion with the Court on July 10, 2020, requesting another extension of time to serve a Defendant Kenney if she had honestly served him 58 days earlier.  It further makes no sense that she would allege in that same motion that she was still making efforts to have Defendant personally served if she had already completed the task on May 14, 2020.  "'[A] litigant has a duty to keep himself [or herself] informed as to the progress of a pending case.'" *Bland v. Hammond*, 177 Md. App. 340, 358 (2007) *citing quoting Das v. Das*, 133 Md. App. 1, 19 (2000). Service upon Defendant's legal surrogate, in this case, his mother, would have been personal service if he was actually domiciled there and service actually occurred with a valid and unexpired summons.  However, none of these things occurred.

A similar situation occurred in an unreported Bankruptcy case out of Florida not awfully

long ago.  The case has so many parallels to this one that it deserves honorable mention.  In the

case of *In re Certified HR Services Co.*, B.R. 2008 WL 58944 (S.D. FL. January 2, 2008), the

plaintiff brought a complaint of fraudulent conveyance against the defendant four days before the

tolling of the statute of limitations for avoidance actions pursuant to the Bankruptcy Code.  The

summons expired before it could be served and the plaintiff filed a motion to extend the time to

serve the summons that made no mention of the previously expired summons. The motion was

granted, however, the only effect of the Order granting the extension was to allow the Plaintiff an

extension to serve any alias summons.

In analyzing the case before granting the defendants request for dismissal, the court

expressed the following:

> "[I]t is inexplicable why the Plaintiff did not simply get an alias
> summons and serve it within the time provided for in the Order. It
> is clear that the Plaintiff never asked for the Court to extend the
> time to serve the original summons, because such a request would
> have required a showing of excusable neglect since the summons
> had already expired. FED. R. BANKR.P. 9006(b)(1). The Plaintiff
> has only served an expired summons. Furthermore, the 120 day
> time period as required by FED.R.CIV.P. 4(m) expired no later
> then September 6, 2007. Thus as of today the Plaintiff has failed to
> serve a valid summons within the meaning of that rule.
> The burden of compliance with the Bankruptcy Rules in serving
> the summons and complaint to obtain jurisdiction over the named
> defendant is on Plaintiff and his counsel. *See In re Van Meter*, 175
> B.R. 64 (9th Cir. BAP 1994); *In re Heinz*, 131 B.R. 38 (Bankr.
> Md.1991) (Plaintiff bears responsibility for prompt service of the
> complaint and summons.). Dismissal for lack of compliance is
> warranted even if the statute of limitations has intervened. In re
> Heinz, 131 B.R. at 42.

The same reasoning and analysis should be applied here with equal force.  Simply put, this Court

never acquired personal jurisdiction over Defendant.  *See Mississippi Publishing Corp. v.*

*Murphree*, 326 U.S. 438, 444-45 (1946) ("It is true that the service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."). Therefore, Defendant can not be in default. For these and other reasons, Defendant's motion to vacate should be respectfully GRANTED.

### b. Reasonable promptness

Defendant received notice and order of default by happenstance when he happened to visit his mother on or about March 15, 2021, after not seeing or speaking with her since the beginning of the COVID-19 pandemic in or about late February-early March, 2020. Upon seeing the documents from federal court on or about March 15, 2021, he immediately contacted counsel who went on PACER to research the case. It was there Defendant learned for the first time of Plaintiff's lawsuit and began to saving his money to actually retain counsel. Counsel was retained in late March, and Defendant promptly filed the instant motion timely on April 5, 2021. Thus, Defendant Kenney's reasonable promptness cannot be credibly disputed.

### c. Personal responsibility

For the same reasons above, Defendant's display of personal responsibility in actually raising, saving and borrowing funds to hire counsel to address these very disparaging and salacious reputation-ending matters, cannot be denied. He was otherwise prepared to put on a vigorous defense which include the ones raised here in his motion to vacate.

### d. Prejudice to the party

Plaintiff has not suffered any prejudice because it was her misrepresentations, lies, and deception, that have led her to this place. Plaintiff's process server, Jeff Foreman, not only misrepresented the allegations contained in his Affidavit of Service by claiming that he served

Defendant via his mother at Defendant's dwelling or usual place of abode, but Plaintiff

knowingly presented this false and fraudulent information to the court. Plaintiff used Foreman's

report of failed attempts to request a second extension of time to serve process. However, once

the court granted the motion, having made no further efforts to serve Defendant, Plaintiff

attempted to reused the same information of her process servers failed attempts to present to the

court as if service had been perfected the entire time. The only person prejudiced by this

scandalous effort is Defendant Kenney.

### e. History of dilatory action

Defendant Kenney has no history of dilatory action, he has simply never been properly

served. Plaintiff on the other hand, has had close to 180 days to locate and effect service upon

Defendant. After failing to do so on May 14, 2020, Plaintiff took no further action for over 88

days to serve Defendant. In fact, she did not even attempt to do anything. For these reasons, any

history of dilatory action falls upon Plaintiff for trying to circumvent the law by cheating. She

misrepresented service of process to score a undeserved judgment against a hard-working

innocent man who is not heavily resourced nor properly served.

### f. Availability of sanctions less drastic

There is no other fair and just sanction that is less drastic than granting this motion to

vacate and further dismissing the case *en toto* because Plaintiff failed to comply with Rules 4 (e)

and (m).

### g. Meritorious defense

On June 7, 2018, Defendant was charged criminally for the rape and related offenses

brought by the State of Maryland on behalf of prosecutrix, Jane Doe. After a 5 day jury trial,

Defendant was acquitted of all the charges. He was found Not Guilty of second degree rape, Not Guilty of third and fourth degree sex offenses, and not guilty of second degree assault. The case boiled down to the credibility of Doe, and it was obvious that her credibility was woefully lacking from the very beginning. Doe told a myriad of tales under oath, one was that she was raped by two men although she told police it was only one, and that one sparked an investigation.

Things had gotten so bad that Defendant filed a civil suit after his acquittal of charges against Doe because Doe would not relent with her false accusations. On or about November 19, 2019, Defendant filed a complaint against Doe in the Circuit Court for Baltimore City entitled *John Kenney v. Det. Thomas Wolf and Ana Rovira*, 24C19005876 (2019). Doe however has managed to consistently evaded service and her current attorney was unwilling to accept service on her behalf. Her attorney even move to have her name and address removed from the complaint because Defendant's counsel was looking for her. Defendant's case was ultimately dismissed without prejudice for lack of personal jurisdiction because Doe could never be located. However, Defendant still has time to bring a malicious prosecution claim. He simply needs Doe's address to complete the service on behalf of Defendant. Doe is allegedly from and living in another country the last Defendant heard.

Nonetheless, during Defendant's criminal trial, there was no forensic evidence linking Defendant to Doe's rape case. There was no DNA, no finger prints, pubic hairs, blood, or anything creating an illicit nexus between Defendant and Doe. Jane Doe's sworn testimony at trial was extremely inconsistent, inaccurate, and intentionally false on many instances. *See* Rule 804 (b).

At the time of the events, Jane Doe told police that her rapist did not wear a condom, she

also told her roommate, Jessica Oldakowski, the same thing.  In Defendant's jury trial, however, Jane Doe changed her testimony, and said her rapist wore a condom.  Doe stated under oath during Defendant's jury trial, that she had not had sex within five days of the alleged rape.  However, the report from her forensic examination revealed two other men's DNA from semen was found in her vagina.  Doe testified during the criminal trial that at the time of her rape she was on her menses and her tampon was inserted while the sexual assault took place but no male DNA was found on the preserved tampon.  The lack of evidence suggested the DNA of the tow males was not from the evening in question but from earlier in the week sexual encounters.

Jane Doe was 19 years old drinking alcohol in a Federal Hill Bar (Magerk's Pub & Grill, 1061 S Charles St, BA, MD 21230), however the legal drinking age is 21.  She testified that she was carded at the door.  Doe obviously presented a phoney identification card to gain entry into the Bar.  Doe was presented a photographic array by Det. Wolf to see if she could identify her alleged rapist --that photo array included Defendant's picture.  Doe did not select Defendant's picture as her rapist, in fact, she expressly told Det. Wolf that her alleged rapist's photograph was not in the array.  Doe additionally gave the description of her alleged rapist that did not remotely fit Defendant's description.

Doe claimed that while she was drinking at the bar someone put a date rape drug into her drink, like a roofie (flunitrazepam, Rohypnol ), however, when her forensic exam was conducted less than 24 hours later, the only drugs in her system were alcohol and marijuana.  Doe told Defendant's jury in the criminal trial that she didn't smoke marijuana but the THC was present.

Doe next falsely accused Charles Veney of rape but was in a consensual relationship with him.  Interestingly, she claimed she lost her purse on her way home from the Bar, blamed Veney

for it, and all of a sudden, Defendant was charged rape and related offenses. Veney's semen was found in Doe's forensic exam according to the State's expert. However, Defendant saw Doe with Veney in the bar, making out (kissing intimately). They clearly knew each other by Defendant's account well enough to engage in public displays of affection with no resistance or reservations.

Doe reported to police that she was raped "once" on February 17, 2017. However, during trial Doe pursued an allegation that she was raped twice on that same night. She said she was raped in front seat of a vehicle wearing a seatbelt, but pics of her were produced at the criminal trial of her in the front seat of the vehicle with no seatbelt or restraints around her. The pictures appear to have been taken as the vehicle entered the Pratt Street & Light streets intersection of downtown Baltimore. The Pratt Street intersection is merely minutes or less from Magerk's Bar in Federal Hill where she first got into the vehicle. In the pics, Doe hiked her skirt up to expose her upper thighs and waistline.

Jane Doe testified and filed suit based upon her false allegation that Defendant was an Uber driver. Defendant was not an Uber Driver. (Df. Aff.). Doe has known ever prior to the criminal trial and prior to filing her complaint against Uber that Uber had nothing to do with her rape allegation. Doe testified under oath that Defendant was a Driver for Opulence Transportation on the evening in question. However, just like she given false accounts of Defendant, she has also given a false account of Uber. The Uber scandal however was much easier to disprove. If Doe would have ordered an Uber on the morning in question, there would be evidence of the transaction. There was none. Veney and Doe were together earlier that evening. Doe knew she had not ordered an Uber to get home that morning because she elected to ride home with Veney.

Doe is very familiar with Uber, how to order one, and how the process works. Doe took an Uber a week before the incident in question and the evidence of that transaction still exists. Therefore, Doe was well familiar with the electronic data that is developed and maintained by an Uber when she orders a ride. Doe continues to blame Defendant and Uber for sex assault that neither one of them participated in any way.

When Doe arrived at her dormitory on February 17th, 2018, she politely got out of the car she claimed she was raped in as the driver watched her safely enter her building before he responsibly pulled off slowly. There was fleeing or spinning of wheels from the scene of Loyola's campus to avoid detection. Doe walked very succinctly and steadily into her dormitory with a normal gait after she exited the vehicle. It should be noted that she took her time getting out of the vehicle; she did not flee nor make haste to exit and leave in any way. Nor did she appear disheveled or distressed. There were no screams nor cries for help. In fact, when Doe entered her building, she politely spoke to the person at the front desk before she made her way to the elevators to retire to her room.

Doe had her cell phone with her the entire night. She did not call the police while she was allegedly raped in the car or immediately after she arrived home. Doe, instead, rode in the car with the driver who never threatened her nor ever spoke a word about the raped or anything else. According to Doe's testimony, she went home and went to sleep. At the urging of her roommate, Doe called the police the much later in the early afternoon --after the alleged rape. Initially, she told her roommate that she did not want the police involved.

According to the State's evidence, Doe remained in the car for close to an hour with her alleged rapist. Doe testified the car randomly pulled over to the side of the road on a

Baltimore City street on the way home to her Loyola College dormitory from a Magerk's Pub. There was no dark alley, back street, or building, according to Doe, it was just the side of the rode that they traveled on the way home. During the alleged rape, Doe alleged that the driver got out of the his seat and either opened the door and walked around the car or crawled over the front seat to mount Doe. She further testified she did little to fight or push him off. Instead, she claimed she punched on her own stomach to make herself vomit on her assailant's face and all over his car. She claimed she vomited all over her dress multiple times, however, no vomit was located in car and very few small stains were located on her dress.

During Defendant's trial, Doe told the jury that she was raped in the front seat of the vehicle while she was seat belted in the front passenger seat. However, pictures exists that clearly depict her in the front seat without her seat belt. Photographs were presented during Defendant's trial to show that she additionally exposed herself while in the front seat without wearing her seat belt. There are also photographs of her exposed with her feet up on the dash board and her dress hiked around her waist.

At the end of the day, the case boiled down to Doe's credibility or lack thereof. Defendant did not rape or much less engage in any type of sexual activity with Doe. (Df. Aff.). For these and other reasons, Defendant requests that the court GRANT this Motion to Vacate and GRANT such other and further relief deemed fair and just.

## IV.   CONCLUSION

Based upon the foregoing, Defendant Kenney's motion to vacate should be respectfully GRANTED, and that Plaintiff's Complaint be DISMISSED pursuant to Rule 4(m).

Respectfully submitted,

_____/s/_____

J. Wyndal Gordon
Fed. Bar No.:  #23572
**THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**
20 South Charles Street,
Suite 400
Baltimore, Maryland 21201
jwgaattys@aol.com
410.332.4121 o
410.347.3144 f

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** this _9th _ day of _Apr._, 2021, that the foregoing Motion to Vacate was served upon Plaintiff's Counsel:

Roy Mason
Zachary Howerton
223 Duke of Gloucester Street
Annapolis, Maryland 21401

_____/s/_____
J. Wyndal Gordon

**IN THE UNITED STATES DISTRICT COURT OF MARYLAND**

JANE DOE                                    *

     Plaintiff                          *

     v.                                       *

UBER TECHNOLOGIES, INC.          *

     Defendant                        *        Case#: 1:20-cv-00370
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ORDER</u>

**UPON CONSIDERATION**, of Defendant John Kenney's Motionto Vacate and the Response of Plaintiff Jane Doe;

**IT IS HEREBY ORDERED**, this ___ day of ____, 2021, that the foregoing Motion be GRANTED;

**IT IS FURTHER ORDERED**, pursuant to F.R.Civ.P 4(m), that Plaintiff's case be DISMISSED without prejudice.


                            _____
                            JUDGE