IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANE DOE, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | CIVIL NO. JKB-20-0370 |
| UBER TECHNOLOGIES, INC, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

In this case, Plaintiff Jane Doe brings claims against Defendant Uber Technologies, Inc. ("Uber") for the alleged tortious conduct of former Defendants John Kenney, Jr. and Charles Veney.[1] Now pending before the Court is Uber's Motion to Dismiss for Failure to State a Claim. (ECF No. 27.) The motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Uber's motion will be GRANTED IN PART and DENIED IN PART.

### *I.   Background*[2]

On February 17, 2017, Plaintiff attended a social event in Baltimore. (Am. Compl. ¶ 23, ECF No. 22.) While there, she "consumed several alcoholic beverages" and then "realiz[ed] that

---

[1] On April 23, 2021, Plaintiff voluntarily dismissed Defendants Kenney and Veney from the case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). (ECF No. 48.)
[2] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Uber invites the Court to take judicial notice of additional facts (or more often, the absence of such facts), from the state criminal trials of Kenney and Veney. (*See* Mot. Dismiss at 13–14.) Specifically, Uber asks the Court to notice that the prosecution produced no evidence at either trial demonstrating that Plaintiff used Uber that evening or that Kenney's vehicle had an Uber decal. (*Id.*) However, Uber fails to explain why the absence of evidence should be treated as evidence of absence—particularly given that these facts do not seem relevant to the proofs required at those trials. Accordingly, the Court declines to construe the state prosecutor's failure to produce such evidence as conclusive proof that Plaintiff did not use Uber on the night in question and that Kenney's vehicle did not display an Uber decal.

1

she may be too inebriated to drive home safely." (*Id.* ¶¶ 23–24.) Instead, she ordered a ride using the Uber application on her smartphone (the "Uber app") and "received confirmation from the app that her driver 'John' was on his way to pick her up in a dark Honda Accord." (*Id.* ¶ 25.) Believing it to be her Uber, Plaintiff entered John Kenney's vehicle, where "[a]lcohol consumption caused [her] to lose consciousness shortly after confirming the address to her dorm." (*Id.* ¶ 27.) When Plaintiff regained consciousness, she was allegedly being sexually assaulted by Kenney. (*Id.*) A subsequent "Sexual Assault Forensic Exam" also allegedly confirmed that Plaintiff was "raped by Defendant Veney while she was unconscious." (*Id.* ¶ 30.)

Sometime later, Plaintiff also learned that Kenney had used her cell phone while she was unconscious and had added himself to her Snapchat under the username "Opulence Transportation." (*Id.* ¶ 31.) She searched this name on Facebook and discovered a page that contained two reviews alleging that Kenney had stolen phones from other passengers and fraudulently charged their accounts. (*Id.*)

At the pleading stage, Plaintiff alleges two alternative factual theories of what occurred on the night in question and argues that Uber caused or facilitated her sexual assault under either. In the first theory, she alleges that Kenney joined Uber as a driver "under the alias 'Alexander Sutton-Sharpe.'" (*Id.* ¶ 39.) Uber failed to perform adequate background checks to confirm Kenney's identity or ascertain the prior allegations of misconduct made against him. (*Id.* ¶¶ 83, 94.) Then, although Kenney "lost his Uber driving certificate on February 11, 2017, six days before the incident," Plaintiff alleges that "Uber intentionally did not confiscate [Kenney's] Uber decal" and that "Defendant Kenney's access to the Uber app as a driver continued uninterrupted because Uber was negligent in failing to prevent ongoing use of its app by drivers it had terminated." (*Id.* at ¶¶

2

39–40.) Under the first theory, because Kenney was still able to access the Uber app, he "was able to intercept her call because of Uber's negligent management of its app." (*Id.* ¶ 44.)

In the alternative, under the second theory, Plaintiff alleges that she was not connected with Kenney through the Uber app, either because she did not call an Uber that evening; called and cancelled her Uber; or was matched with an Uber driver who was not Kenney through the Uber app. (*See id.* at ¶ 43, 45; *see also* Reply at 30, ECF No. 44.) In this alternative theory, Plaintiff alleges that she relied on the Uber decal that drivers use to visibly display their Uber affiliation. (Am. Compl. ¶ 52.) Plaintiff alleges that Uber's advertising brands these decals as a "symbol of safety for prospective passengers" (*id.*), but that Uber fails to collect these decals from drivers who have been terminated or are otherwise no longer affiliated with Uber. (*Id.* ¶ 40.) Plaintiff alleges that Uber's failure to confiscate Kenney's decal allowed him to act as an "imposter driver" to deceive Plaintiff into entering his vehicle. (*Id.* ¶ 126.)

Under both factual theories, Plaintiff alleges that Uber also failed to monitor the ride itself and therefore did not "determine that [Kenney] had taken the wrong route back to Jane Doe's destination and stopped for an extended time." (*Id.* ¶ 46.) Plaintiff also alleges that Uber's failure to screen drivers, limit decal distribution, and monitor her ride were not isolated failures, but endemic ones driven by Uber's policies that prioritize profits over rider safety. (*See id.* ¶¶ 79–97, 109–11, 119–129, 165–68.) She contends that these rider safety issues are exacerbated by Defendant's marketing, which specifically targets women and intoxicated persons with guarantees of safety. (*Id.* ¶¶ 112–18, 130–32, 154–64.) Plaintiff also alleges that Uber has failed to effectively remedy its structural safety issues, even after they have been routinely exposed by both regulators and other instances of assault and sexual assault by Uber drivers. (*Id.* ¶¶ 98–106, 133–53.)

3

Plaintiff concludes that these systemic flaws are what caused, or at least facilitated, her sexual assault.

## II. Legal Standard

When "considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

Plaintiff brings claims against Uber for negligence as a common carrier; negligence by misfeasance; negligent hiring, supervision, and retention; negligent misrepresentation; intentional misrepresentation; fraud; battery; and intentional infliction of emotional distress. (*See* Am. Compl. ¶¶ 175–224.) As noted above, Plaintiff brings these claims under two alternative factual theories. Uber argues that this dooms Plaintiff's Amended Complaint because "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." (Reply at 3 (quoting *Ramos v. Bank of Am., N.A.*, Civ. No. DKC-11-3022, 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012).) Here, however, the inconsistencies are pled in the alternative, and the Federal Rules permit "[a] party [to] set out 2 or more statements of a claim or defense alternatively or hypothetically." Fed.

4

R. Civ. P. 8(d)(2); *see also* 5 ARTHUR R. MILLER, MARY KAY KANE & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1283 (3d ed. 2021) ("Under Federal Rule 8(d)(2) a party may include inconsistent allegations in a pleading's statement of facts."). The permissibility of alternative pleading depends on whether "a party, after a reasonable inquiry and for proper purposes, must assert contradictory statements when he or she legitimately is in doubt about the factual background of the case." *Id.* It is understandable that Plaintiff cannot recall with precision the events that occurred on the night of February 17, 2017, and although Uber argues that more clarity may lie in *its* records (Mot. Dismiss at 13), resolving disputed facts would be premature at this stage. Accordingly, the Court will evaluate each of Plaintiff's legal claims under both factual scenarios and will dismiss her Complaint only if both fail to state a claim. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). In doing so, the Court will refer to the factual scenario where Plaintiff and Kenney were connected through the Uber app as the "first theory" and the various alternative scenarios collectively as the "second theory."

### A. *Implausible Claims*

The Court now considers whether Plaintiff states a claim for relief and finds that Plaintiff's claims for negligence by misfeasance (Count II); negligent hiring, supervision, and retention (Count III); battery (Counts VII and VIII); and intentional infliction of emotional distress (Count IX) fail under either factual theory.

### 1. *Negligence by Misfeasance*

Plaintiff's second count alleges that Uber was negligent in distributing Uber decals to poorly screened and monitored drivers, which proximately caused her to be sexually assaulted. (Am. Compl. ¶ 182.) Under Maryland law, "there is no duty to control a third person's conduct

5

so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986). This rule holds even if an "actor realizes that he has the ability to control the conduct of a third person and could do so with only the most trivial of efforts and without any inconvenience to himself." *Warr v. JMGM Group, LLC*, 70 A.3d 347, 355 (Md. 2013) (quoting *Barclay v. Briscoe*, 47 A.3d 560, 578 (Md. 2012)). In this case, the only special relationship that is plausibly pled is a common carrier-passenger relationship between Uber and Plaintiff.[3] Thus, at best, this claim is redundant with Plaintiff's claim for negligence as a common carrier. *See infra* Part III.B.4.

Plaintiff argues that this claim can survive even absent a special relationship because "misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a new risk." (Opp'n to Mot. Dismiss at 12–13, ECF No. 40 (quoting *Doe v. Uber Techs., Inc.*, Civ. No. JSC-19-3310, 2020 WL 2097599, at *3 (N.D. Cal. 2020)).) This broader conception of duty with respect to third-party harms has, however, been emphatically rejected by the Maryland Court of Appeals, which has stated that "the general duty to avoid conduct that unreasonably creates foreseeable risk of harm to a third party . . . is not the law in Maryland." *Barclay*, 47 A.3d at 578 (internal quotation marks and citations omitted). Therefore, Plaintiff cannot establish negligence based on third-party conduct absent a special relationship between Uber and either Kenney or herself. She has not done so independent of her claim that Uber was negligent as a common carrier, and accordingly, Plaintiff fails to state a unique claim for negligence by misfeasance.

---

[3] As noted below, Plaintiff fails to plead an employer-employee relationship between Uber and Kenney, which could establish a "special relationship." *Barclay*, 47 A.3d at 564; *see also infra* Part III.A.2. Further, even if this relationship were adequately pled, it would merely collapse Plaintiff's misfeasance claim into her negligent hiring, retention and supervision claim.

6

## 2. *Negligent Hiring, Supervision, and Retention*

To plead a claim for negligent hiring, supervision, or retention, a plaintiff must allege "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Asphalt & Concrete Servs. v. Perry*, 108 A.3d 558, 571 (Md. Ct. Spec. App. 2015). Here, Plaintiff fails to establish the first element because she alleges that Kenney was terminated by Uber prior to the incident, and therefore, no employment relationship existed on February 17, 2017. (Am. Compl. ¶ 39.) At most, Plaintiff has alleged that Kenney acted within the scope of an apparent agency relationship. (*Id.* ¶ 174.)[4] Apparent agency can only exist "[i]n the absence of actual authority," *Dickerson v. Longoria*, 955 A.2d 721, 735 (Md. 2010), and therefore cannot form the basis for a claim for negligent hiring, supervision, or retention which requires "the existence of an employment relationship." *Perry*, 108 A.3d at 571.

Further, even if Kenney were Uber's actual agent or employee, Plaintiff has not demonstrated that Uber's allegedly deficient background checks were "the proximate cause of the plaintiff's injury." *Perry*, 133 A.3d at 1155. The causal chain Plaintiff alleges is that if Uber had conducted a proper background check of Kenney's application, Uber would have uncovered Kenney's identity and "discovered the two reports stating that he stole from passengers before February 2017." (Opp'n to Mot. Dismiss at 25.) However, Plaintiff fails to explain how uncovering Kenney's identity would have caused Uber to (1) associate him with "Opulence

---

[4] Plaintiff alleges that Kenney acted "within the scope of both his actual and apparent Uber agency when he picked the Plaintiff up" (Am. Compl. ¶ 174), but the allegation of actual agency is a legal conclusion unsupported by the factual pleadings. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (internal quotation marks and citation omitted) ("[S]tatements of bare legal conclusion [in a complaint] are not entitled to the assumption of truth.").

7

Transportation," or (2) locate and review Opulence Transportation's Facebook page, which is how Plaintiff identified the prior complaints. (Am. Compl. ¶ 31.) Without further factual allegations, this causal connection is implausible, and Plaintiff's negligent hiring claim fails for this independent reason.

### 3. *Intentional Torts*

Plaintiff seeks to hold Uber vicariously liable for three intentional torts allegedly committed by Kenney and Veney, including battery and intentional infliction of emotional distress. (*Id.* ¶¶ 207–24.) Even assuming *arguendo* that Plaintiff's allegations establish an agency relationship between Uber and Kenney and Veney, the state law tort claims alleged in these counts fall outside the scope of any putative employment.

"The general test [for scope of employment] set forth in numerous Maryland cases . . . is whether the acts were in furtherance of the employer's business and were authorized by the employer." *Balt. City Police Dep't v. Esteppe*, 236 A.3d 808, 830 (Md. Ct. Spec. App. 2020) (cleaned up). Thus, an act is outside the scope of employment if it "represent[s] a departure from the purposes of furthering the employer's business, or where the employee is acting to protect the employee's own interests, even if during normal duty hours and at an authorized locality." *Balt. City Police Dep't v. Potts*, 227 A.3d 186, 201 (Md. 2020) (cleaned up and citation omitted). Courts applying Maryland law have consistently found that "an employer is not vicariously liable for the torts of assault and battery based on sexual assaults by [an] employee as they are outside the scope of employment." *Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, Civ. No. CCB-07-2595, 2010 WL 1328572, at *9 (D. Md. Mar. 26, 2010); *see also Tall v. Bd. of Sch. Comm'rs of Balt. City*, 706 A.2d 659, 670–71 (Md. Ct. Spec. App. 1998) (collecting cases). So too here.

8

Plaintiff relies on *Doe v. Uber Tech., Inc.*, where a district court in California concluded that it could not "determine—as Uber effectively argues—that as a matter of law sexual assault by Uber drivers is always outside the scope of employment." 184 F. Supp. 3d 774, 785 (N.D. Cal. 2016). That case, however, was decided under California law where "[i]t is no longer a principle . . . that an employer may be vicariously liable for an employee's assault only when the assault was committed to further the interest of the employer." *Id.* Maryland has not abandoned this principle, and therefore, *Doe v. Uber Tech., Inc.* is inapposite. Accordingly, Uber bears no *respondeat superior* liability for the intentional torts of Kenney and Veney as the commission of those tortious acts falls outside the scope of any conceivable employment relationship.

### B. *Potentially Plausible Claims*

Plaintiff's remaining claims are only plausible under the first theory. Absent Plaintiff having used the Uber app to connect with Kenney, her claims are implausible for various reasons. Central to these reasons is the fact that, although Plaintiff analogizes Uber to a traditional taxi cab service, (*see* Opp'n to Mot. Dismiss at 21 ("the Uber app is no different from hailing a taxi")), there is at least one salient distinction between the two. Specifically, Uber has implemented a "novel process for matching riders with drivers" (*id.* at 3), whereby an individual requests a ride in the Uber app and is matched with a *specific* driver. Unlike traditional taxis, Uber riders cannot simply enter any marked Uber and request a destination; they must instead request a ride through the Uber app, which pairs them with specific Uber drivers and vehicles. (*Id.* ¶¶ 24–26.) Absent this directive by Defendant to enter Kenney's vehicle, Plaintiff's remaining claims fail.

### 1. *Negligence as a Common Carrier*

To prevail in a claim for negligence, Plaintiff must "prove four well-established elements: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant

9

breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Washington Metro. Area Transit Auth. v. Seymour*, 874 A.2d 973, 976 (Md. 2005). For her first count, Plaintiff alleges that Uber is a common carrier and therefore "owes its passengers something *more* than an ordinary duty of care during transport." *Id.* at 977 (emphasis in original). This duty has often been described as "*the highest degree of care* to provide safe means and methods of transportation," *id.* (emphasis in original), and includes preventing sexual assaults on passengers by the common carrier's employees as well as by third parties from whom passengers could reasonably be protected. *See Balt. & O. R. Co. v. Barger*, 30 A. 560, 561 (Md. 1894) ("If [a company's employee] has the opportunity to prevent an assault on a passenger in his charge, it is his duty to do so, and his failure to make a reasonable effort to protect the passenger from such assault would make the company responsible.").

Uber disclaims this duty and argues that orders issued by the Maryland Public Service Commission (the "Commission") demonstrate that only UberBlack and UberSUV—neither of which are at issue in this case—constitute common carriers under Maryland law. (Reply at 6.) The Commission order provisions cited by Uber, however, merely clarify the scope of those orders and do not identify the services provided by Uber which constitute common carriers. Indeed, the statutory structure of the Maryland Code implies that Uber's status as a common carrier is confirmed by the Commission's issuing of *any* order with respect to Uber, regardless of the substance of that order.[5] Under Maryland law, the Commission has jurisdiction over public service companies, which include common carrier companies and other types of corporations that could

---

[5] Further, "common carrier" is not defined by the Commission, but by statute. *See* Md. Code Pub. Util. Div. § 1-101(e)(1). Uber offers no plausible reason to believe that it is not a common carrier and does not explain why UberBlack/UberSUV services could constitute common carriers while other Uber services would not.

10

not plausibly describe Uber. *See* Md. Code Pub. Util. Div. §§ 2-112, 1-101(x). Thus, the Commission's jurisdiction to issue orders affecting Uber appears to confirm that Uber is a common carrier under Maryland law.

Uber does not address this statutory structure, instead arguing that *even if* it is a common carrier, it owed Plaintiff no duty because a common carrier's duty is limited to "[t]he existence of a contract of transportation as the element which determines liability." *St. Michelle v. Catania*, 250 A.2d 874, 877 (Md. 1969). Under Plaintiff's second theory—that is, that the Uber app did not connect Plaintiff and Kenney—the Court agrees. Accordingly, Plaintiff's claim for negligence as a common carrier would fail under the second theory because Plaintiff would have never formed a contract of transportation with Uber. However, under the first theory, where Plaintiff pleads that the Uber app connected Plaintiff with Kenney, Plaintiff and Uber would have entered into a contract of transportation, and Uber would owe Plaintiff a duty as a common carrier that could plausibly encompass protecting her from sexual assault by Kenney and Veney. Therefore, Plaintiff's claim of negligence based on Uber's status as a common carrier is well-pled. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

### 2. *Misrepresentation Theories (Counts IV–VI)*

Finally, Plaintiff raises three claims negligent misrepresentation; intentional misrepresentation; and fraud, stemming from Uber's allegedly false representations regarding the efficacy of Uber's security and safety protocols. (Am. Compl. ¶¶ 189–206.) Defendant appears to argue that these claims are only implausible under the second theory. (*See* Mot. Dismiss at 17–18.) On that score, they are correct because all three claims require that a plaintiff acted in reasonable reliance on a statement by the defendant. *See Lloyd v. Gen. Motors Corp.*, 916 A.2d

11

257, 273 (Md. 2007) ("The following elements are required to assert a claim for negligent misrepresentation . . . the plaintiff, justifiably, takes action in reliance on the statement."); *Sass v. Andrew*, 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003) ("In order to prevail [on fraud or intentional misrepresentation claims], a plaintiff must prove . . . that the plaintiff relied on the misrepresentation and had the right to rely on it."). Uber's alleged misrepresentations clearly encourage customers to use the Uber app to connect with designated drivers. (*See* Am. Compl. ¶¶ 114 ("Your ride, on demand, transportation in minutes *with the Uber App*") (emphasis added), 115 ("Uber is committed to *connecting you* to the safest ride on the road.") (emphasis added).)

Plaintiff does not allege that Uber instructs customers to get into any vehicle bearing an Uber decal, or that such a practice would be safe. Thus, unless Plaintiff connected with Kenney via the Uber app, as she pleads in the first theory, her reliance on Uber's statements would not have been justified. Because Plaintiff can only plead reasonable reliance based on the first theory, the second theory fails with respect to these claims. Defendant has not given any reason that these claims would fail under the first theory, and the Court finds that these claims survive dismissal.

### *C. Further Proceedings*

Although five claims survive under the first theory, the Court's discussion as to why they would fail under the second theory is not academic. Uber disputes the veracity of the factual allegations set forth in the first theory and suggests that the truth of these allegations can be readily established by reference to its records. (*See* Mot. Dismiss at 13 ("Uber maintains all records regarding such ride requests, even where a ride request is cancelled, and it has no record whatsoever that Plaintiff made such a ride request at the time in question.").) While a 12(b)(6) motion is the wrong vehicle through which to litigate such a factual dispute, Uber's representations suggest that an appropriate motion may be tenable after limited discovery on the issue of whether

Plaintiff connected with Kenney through the Uber app. The parties should be prepared to address whether and how to implement appropriate discovery at a future scheduling conference.

### IV. Conclusion

For the foregoing reasons, an order will issue denying Uber's motion to dismiss with respect to Plaintiff's claims of negligence as a common carrier (Count I), negligent misrepresentation (Count IV), intentional misrepresentation (Count V), and fraud (Count VI) and granting Uber's motion with respect to Plaintiff's claims for negligence by misfeasance (Count II), negligent hiring, retention, and supervision (Count III), battery (Counts VII and VIII) and intentional infliction of emotional distress (Count IX).

DATED this 9 day of June, 2021.

BY THE COURT:

James K. Bredar
Chief Judge